468 P.2d 615

**SCHOOL DISTRICT NUMBER ONE OF PIMA COUNTY, Arizona, Appellant,**
v.
**Russell HASTINGS, Appellee.**
**No. 2 CA–CIV 741.**

Court of Appeals of Arizona,
Division 2.
April 30, 1970.

Review Granted June 2, 1970.

Opinion Withdrawn.

Rose S. Silver, County Atty., Pima County, Lawrence Ollason, Sp. Deputy County Atty., Tucson, for appellant.

Miller, Pitt & Feldman, Tucson, for appellee.

ORDER

PER CURIAM.

The court having considered the motion for a rehearing, concludes that it be denied for the reasons herein set forth.

 The agreement between the parties dated January 17, 1966, sets forth the method by which the architect was to be compensated. It states in paragraph B that "[t]he Owner agrees to pay the Architect * * * a fee not to exceed *six (6)*

*per cent of the construction cost* of the Project with other payments and reimbursements as hereinafter provided, the said percentage being hereinafter called the *Basic Rate.*" (Emphasis added.)

The only exception to the fee agreement set forth in paragraph B, is in paragraph C(2). Paragraph C(2) is headed "EXTRA SERVICES AND SPECIAL CASES" and provides for three situations, namely:

1. "If the Architect is caused *extra drafting or other expense* due to changes ordered by the Owner * * * he shall be *equitably paid.* * * * .

[2.] Work let on any cost-plus basis. * * *

[3.] If any work * * * is *abandoned or suspended,* in whole or in part. * * *" (Emphasis added.)

The agreement says that the architect is to be paid a "Basic Rate", namely, "6% of the construction cost." It also provides that for extra services or in special cases he is to be "equitably paid."

Thus, the "Basic Rate" can only be 6% of the actual construction cost of $505,-050.00. The architect when he revised the working drawings requested that he be paid for such revision under paragraph C(2) of the agreement. There was agreement on this point and the amount agreed upon was $3,599.31.

Thus, the "Basic Rate" is clear and fixed and the amount for extra services was compromised by the parties themselves and is also clear and fixed. In view of this, there is nothing left to determine.

The appellee seems to be of the opinion that it suffices merely to raise its written voice in loud protest. However, this court is more inclined to listen to the voice of reason and to the voice of facts.

The appellee was advised by this court, in its written opinion, that the position taken by him failed. Armed with that knowledge, he now attempts to change the legal and factual situations and to force them, by distortion, into the mold set by this court.

Appellee *now* claims that it is seeking a fee for the "abandoned" plans under paragraph C(2) of the agreement. Yet, the original claim for a fee for the plans made prior to revisions was made under paragraph B which refers to the "Basic Rate" of 6% of the construction cost. Appellee wanted 4% of the first bid. The original untenuous position cannot now be turned around. Even in the pretrial memorandum submitted by the architect, where the issues are delineated no claim is made for a fee for the "abandoned" plans under paragraph C(2) of the agreement.

Appellee, in his brief under "Statement of Facts", states:

"Hastings suggested additional items to be *revised* and indicated in writing that the *revisions* would be made pursuant to *paragraph C2* of the contract, authorizing payment to the architect for extra services. The school district rejected some of Hastings' suggested *revisions* and approved others and agreed that *revision* would be paid pursuant to paragraph C2.

* * * * * *

For the extra work performed in *revising* the working drawings Hastings sent a statement for $3,846.81. The school district disputed the indebtedness and the parties compromised the amount for $3,599.31. * * *" (Emphasis added.)

The appellee's brief is replete with references to *revisions* of the plans and for payment under paragraph C(2) for the agreed compromised figure. However, there is no statement or claim in the brief that he is entitled to be "equitably paid" under paragraph C(2) for any plans "abandoned or suspended, in whole or in part." Had he made such a claim the picture may have been greatly changed.

An examination of the findings of fact of the trial court reveals that the words revised and revisions are frequently used but never the words abandoned or sus-

pended. See findings of facts paragraphs 12, 13, 14, 16, 17 and 19.

Had the architect claimed that there were two contracts and that the first one had been abandoned by the school district, then they could have claimed compensation under the "Basic Rate" method for 4% of whatever the low bid was or, if none, then the estimated cost of construction. Even were that position taken, this case would still be distinguishable from the case of Guirey, Sranka & Arnold, Architects v. City of Phoenix, 9 Ariz.App. 70, 449 P.2d 306 (1969). The *Guirey* case involved two completely different plans, the first set of plans having been abandoned. The case before us only involves one set of plans which were revised solely to eliminate certain non-essentials so as to reduce the cost of construction to bring said cost down to the sum of monies available to the school district. However, the architect specifically states on page 11 of his brief "Hastings does not claim that there were two separate contracts."

The architect states on pages two and three of his Motion for Rehearing that "[o]ne of the *major* contentions advanced by Hastings was that he was entitled to be paid for the first set of approved working drawings which was abandoned by the School District." (emphasis in original) This statement is not borne out by an examination of his brief on appeal. On page four of his brief, he states:

"The *ultimate issue* in this case can be simply stated: Is Hastings entitled to four (4%) percent of the low bid of $658,647.00 or four (4%) of some other figure?" (Emphasis added.)

On page seven, he states:

"Since it was stipulated that Hastings was entitled to two (2%) percent of the cost of construction for supervision the *only issues* before the trial court were as follows:

1. Was Hastings entitled to payment for extra services?

2. Was Hasting's compensation for working drawings, specifications and details to be based upon the rejected bid of $658,647 or the second bid of $505.050?

a. Was Hastings under an obligation to design a building within the school district's budget, and if so, was that obligation waived?

b. If the total compensation due Hastings is in excess of six (6%) percent of the ultimate cost of the project, is such payment authorized by statute?" (Emphasis added.)

Even though the petitioning architect states that "[o]ne of the *major* contentions advanced by "him" refers to payment for plans "abandoned" by him, yet, in his brief on appeal, following his own words, namely, "ultimate issue" and "only issues" there is no claim or even mention of a claim for a fee for "abandoned" plans.

On page six of this brief, he states:

"Judgment is justified
by the law and evidence

Hastings' Judgment for
$11,284.18 is based on the
following computation:

| | |
|---|---|
| First set of working drawings, specifications and details 4% of $658,647 | $26,345.88 |
| Extra work (as compromised) | 3,599.31 |
| Supervision of construction 2% of $500,915 | 10,018.30 |
| | $39,963.49 |
| Less partial payments | 28,679.31 |
| Balance due | $11,284.18." |

This statement was incorporated into paragraph 24 of the trial court's Findings of Fact.

Here again, we are struck by the failure of the attorneys for the architect to sustain their present statement that "[o]ne of the *major* contentions advanced by Hastings was that he was entitled to be paid for the * * * drawings * * * abandoned by the School District." The attorneys state that the judgment is justified but show no claim for "abandoned" plans under paragraph C(2) of the agreement providing for equitable payment.

The portion of the motion which is captioned "Construction of the Ambiguity", adds nothing new to the original argument. Our opinion answers the question raised therein.

█ The attorneys for the architect discuss in the motion papers the why's and wherefore's of their failure to request an oral argument. The reason for the failure of the said attorneys to request oral argument is *not* "clear from the state of the record."

The attorneys had three opportunities to request oral argument. First, in accordance with Rules 5(f)3 and 25, 17 A.R.S. the following is evident:

1. Appellant *may* file a reply brief within 20 days after service of appellee's brief.

2. Appeals in which the time for filing briefs has expired shall be deemed at issue.

3. Written request must be made for oral argument within 10 days after the appeal is at issue.

Thus, when the time expired for appellants to file a reply brief, the attorneys could have requested oral argument at any time within 10 days from the expiration date. They did not do so.

The second opportunity was lost when they failed to request oral argument within 10 days from the date the court accepted the late filing of the reply brief.

The third opportunity was neglected when they failed to request, as they now

do, "suspension of the rules pursuant to Rule 25 [sic, should be Rule 26] and it is requested that the court set this matter for oral argument."

The request for oral argument on this motion is denied.

It is ordered that the motion for rehearing be, and the same is hereby, denied.

HOWARD, C. J., and KRUCKER, J., concur.

Judge HATHAWAY votes to grant the motion for rehearing.